# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **ANNE STEWART,** | ) | **CASE NO. 5:15 CV 33** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **BEAR MANAGEMENT, INC., et al.,** | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment filed by Defendants, Bear Management, Inc.; DiPietro Enterprises No. 1, Inc.; David M. DiPietro; and, Timothy Weinman ("Defendants"). (Docket #25.) Pursuant to Fed. R. Civ. P. 56, Defendants seek summary judgment as to all of the claims asserted by Plaintiff, Anne Stewart ("Ms. Stewart").

**I.  Summary of Facts.**[1]

Ms. Stewart was employed by Defendants at their Tuscarawas Avenue Pizza Oven Store in Canton, Ohio ("Pizza Oven") for over 20 years.  During the relevant time period, Ms. Stewart also worked part-time at Dunkin Donuts.

---

[1] The facts as stated in this Memorandum Opinion and Order are taken from the Parties' submissions.  Those material facts that are controverted and supported by deposition testimony, affidavit, or other evidence are stated in the light most favorable to the non-moving Party.

On February 16, 2013, Ms. Stewart fell while working at Dunkin Donuts, tearing her rotator cuff and fracturing her left hand. (Complaint at Paragraphs 27-29.) Shortly thereafter, Ms. Stewart spoke with Store Manager Mike LaMenza and requested and was granted one week of FMLA leave, beginning February 17, 2013. (Complaint at Paragraph 30.) Ms. Stewart testified during her deposition that she also spoke with Timothy Weinman, the General Manager, by phone about receiving her "bonus pay" for the week she would be off. Her request was granted. (Docket #23 at p. 12; Docket #25-1, Affidavit of Timothy Weinman at Paragraph 2.) Ms. Stewart did not request any type of work accommodation. (Docket #25-1 at Paragraph 2.) During that conversation, Mr. Weinman informed Ms. Stewart that she could not return to work without a full doctor's release. (Docket #23 at pp. 12-15, 21.) Payroll records list a termination date of February 23, 2013. (Docket #29.)

Ms. Stewart asserts that on or about February 22, 2013, her physician released her to return to work, with the restriction that she could not lift over 5 pounds. (Complaint at Paragraphs 31-32.) Ms. Stewart alleges she went to the Pizza Oven and provided a copy of a doctor's release to the Store Manager, Elaine Maley. (Docket #23 at pp. 15, 21-23; Docket #21 at pp. 39-40.) However, there is no such release in evidence; the release was not included in the medical records obtained from Ms. Stewart's doctor; and, there is no deposition testimony from Ms. Maley that she received the alleged release. While she discussed her injury with Ms. Maley, Ms. Maley testified that she did not speak to Mr. DiPietro or Mr. Weinman regarding Ms. Stewart's injury. Neither Mr. DiPietro nor Mr. Weinman received any documentation whatsoever with regard to Ms. Stewart's injury or return to work at any point in time. Further, although Ms. Stewart claims to have been released to work with a lifting restriction prior to her

-2-

surgery on March 25, 2013, medical documentation prepared by Ms. Stewart's doctor on March 4, 2013 indicates she was not permitted to return to work in any capacity from March 12, 2013 to June 4, 2013 (Docket #24, Exhibit 4 at p. 3) and her doctor subsequently indicated she was not released to any work until September 2013. Ms. Stewart collected workers' compensation benefits for temporary total disability from February through September 2013. (Docket #23 at p. 37.)

Ms. Stewart never requested an accommodation from Pizza Oven.[2] (Docket #22 at p. 28; Docket #23 at pp. 35-37; Docket #30 at p. 95.) Deposition testimony from Mr. DiPietro suggests that he had some second-hand knowledge, possibly through word of mouth, that a 5-pound restriction had been discussed. (Docket #30 at p. 79.) Mr. DiPietro testified that he contemplated ways they could allow her to return to work but believed there was no way to ensure she would not be required to lift more than 5 pounds. (Docket #30 at p. 80.) Mr. DiPietro believed a five-pound restriction lifting restriction was "ridiculous" at Pizza Oven. (Docket #30 at p. 93.)

Mr. Weinman testified that in order for Ms. Stewart to return to work, Defendants needed to know from the doctor that she was "excused" to perform all of the tasks required. Mr. Weinman testified that he never tried to determine whether an employee could work without lifting 5 pounds because Pizza Oven needed "a full medical release from the doctor for [Ms. Stewart] to come back." (Docket #31 at p. 46.)

---

[2] A large portion of the deposition testimony and argument in this case centers of Defendants alleged failure to accommodate Ms. Stewart's lifting restriction. For reasons stated below, those facts are not relevant to this Court's disposition of Defendants' Motion for Summary Judgment and, therefore, the Court will only include a limited discussion in the Statement of Facts.

Pizza Oven employees were expected to do every task within the store. (Docket #20 at p. 5; Docket #21 at p. 16; Docket #22 at p. 17; Docket #30 at pp. 62-63, 68, 77, 84.) As stated in the Pizza Oven Employee Manual, "The Pizza Oven has no specific job descriptions for its Employees. All employees, including managers, key day crew personnel, line workers, and delivery drivers are expected to do whatever it takes to get the work done!" (Docket #25, Exhibit 2 at p. 6.) Mr. DiPietro and Mr. Weinman testified that every Pizza Oven employee was expected to be able to perform every task in the restaurant and, therefore, both believed they could not permit Ms. Stewart to return to work without a full release. (Docket #30 at pp. 42-48; Docket #31 at p. 15.) Mr. DiPietro testified, "All I needed was a work release." (Docket #30 at p. 92.)[3]

Ms. Stewart was scheduled for and underwent surgery on March 25, 2013. (Docket #23 at pp. 15-16, 24.) Ms. Stewart testified during deposition that approximately two weeks after her surgery (on or about April 7 or April 8, 2013), she went to Pizza Oven, spoke with Mr. LaMenza, and asked if there were any problems with her taking FMLA leave. (Id. at pp. 35-36.) Mr. LaMenza indicated that there was no problem with Ms. Stewart taking leave and returning to work, and that if she planned to return to work he would need work release papers. (Id. at p. 36.) Ms. Stewart testified that Mr. LaMenza told her she wasn't allowed back because she had a lifting restriction. Ms. Stewart did not request and there was no discussion regarding an

---

[3]

When asked what he believed happened in this case, Mr. DiPietro stated, "I had an employee that worked for me that had a five-pound restriction to work, and I did not have a job for a five-pound restriction. I waited for her to get a full work release, she never could produce it for us, and now I am being sued civilly by Ann[e] because I did not get a full work release and she thought that I should let her work at a job that I can't possibly give her for five pounds or less." (Docket #30 at p. 112-13.)

-4-

accommodation or limited duty. (Id. at pp. 37-38.)

On or about May 27, 2013, Ms. Stewart alleges she attempted to contact Mr. LaMenza to update him regarding her restrictions; that LaMenza told her that she would need to talk to Mr. Weinman before returning to work; and, that Mr. LaMenza stated that he had been directed not to speak with Ms. Stewart. (Complaint at Paragraphs 114-116.) Ms. Stewart alleges she then called Mr. Weinman to inform him that she still wished to return to work, but that he did not respond. (Complaint at Paragraphs 117-118.)

Ms. Stewart texted Mr. Weinman on June 1, 2013, indicating that Mr. LaMenza had directed her to contact him about anything that pertained to work. (Docket #22 at p. 29.) Ms. Stewart alleges she tried to call Mr. Weinman on or about June 10, 2013 and June 17, 2013 and that he did not respond to her calls. (Complaint at Paragraphs 119-120.) On June 17, 2013, Ms. Stewart sent Mr. Weinman a text message that read, "I was supposed to start back to work tomorrow, but the doctor has extended the time period now. I have the documents here with me. Who am I to give them to, to the store or you? Mike said to talk to you, but I called twice and texted once. No response. What would you like me to do?" (Docket #22 at p. 29.)

Ms. Stewart alleges that on or about June 19, 2013, Mr. Weinman called her and stated that Pizza Oven no longer needed a supervisor because they had three managers at that time, but that she could return to work as a non-supervisor, being paid $1 less per hour and would have to give up her annual paid vacation time, despite having identical duties. Ms. Stewart states that she reluctantly agreed. (Complaint at Paragraphs 121-126, 129-135.) Aside from her own statement, there is no evidence of this phone call.

On or about July 2, 2013, Mr. Weinman left Ms. Stewart a voice mail message indicating

-5-

she could not return to work. Ms. Stewart alleges that Mr. Weinman indicated that the decision to terminate her employment was made by Mr. Weinman, Mr. DiPietro and Tony Volpe. (Complaint at Paragraph 139.) Mr. Weinman testified that he terminated Ms. Stewart's employment, as directed by Mr. DiPietro and Mr. Volpe, because she never provided them with a full work release. (Docket #31 at pp. 26, 34-35.) Mr. DiPietro testified that Pizza Oven kept the position open for her for four to six months after her injury; that they never received a medical release permitting Ms. Stewart to return to work; and, that he was unaware Mr. Weinman had left Ms. Stewart a message terminating her employment. (Docket #30 at pp. 101-103.) On July 7, 2013, Ms. Stewart texted Mr. Weinman again, noting that she did not receive an explanation as to why Pizza Oven "let [her] go after 25 years with a work injury" and requesting a written letter stating why she was let go so that she could apply for unemployment." (Docket #22 at p. 31.) He did not respond to her texts.

Ms. Stewart asserts that between her injury and surgery, and at all times since then, she was permitted to return to work with lifting restrictions. (Docket # 23 at pp. 17, 24, 32, 34.) However, documentation from Ms. Stewart's physician (completed in connection with a claim for workers' compensation which is not at issue in this case) indicates that Ms. Stewart was not released to work in any capacity from March 12, 2013 through September 1, 2013. Ms. Stewart returned to work part time at Dunkin Donuts on September 28, 2013, with lifting restrictions, and after a couple of weeks was working full time. (Id. at p. 73.) The lifting restrictions were relaxed from the original 5-pound restriction, to 20 then 30 pounds, and now Ms. Stewart is under a permanent 50-pound restriction. (Id. at pp. 52, 60.)

II.     **Procedural Background.**

-6-

Ms. Stewart filed this lawsuit on January 8, 2015. In Count I, Ms. Stewart alleges retaliation in violation of the Family Medical Leave Act. Specifically, Ms. Stewart alleges that Defendants required her to accept a demotion, accept lower pay, relinquish her paid vacation time and eventually terminated her employment in retaliation for taking leave, in violation of the FMLA.

In Counts II and III, Ms. Stewart raises claims for disability discrimination and wrongful termination based on disability in violation of Ohio Rev. Code § 4112.02. Ms. Stewart alleges it is Pizza Oven's policy not to employ individuals with disabilities and that Pizza Oven will not accommodate existing employees who become disabled and have any restrictions on their ability to work, no matter how insignificant. Ms. Stewart argues that there are many tasks at Pizza Oven which she could have continued to perform which would not have required her to lift in excess of 5 pounds, but that before and after her surgery Pizza Oven refused to discuss and failed to offer her an accommodation. Ms. Stewart asserts that the shared nature of tasks at Pizza Oven would have facilitated the accommodation she needed and that Defendants chose not to accommodate her disability.

Counts IV and V of the Complaint allege wrongful termination in violation of public policy and intentional infliction of emotional distress.

On November 6, 2015, Defendants filed their Motion for Summary Judgment. (Docket #25.) On January 18, 2016, Ms. Stewart filed her Memorandum in Opposition. On January 15, 2016, Defendants filed their Reply Brief. (Docket #33.)

As stated in her Memorandum in Opposition, Ms. Stewart voluntarily dismisses Counts IV and V of the Complaint, leaving only Count I arising under the FMLA and Counts II and III arising under Ohio Rev. Code § 4112.02.

**III.     Summary Judgment Standard.**

Summary judgment is appropriate when the court is satisfied "that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine dispute" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine [dispute] of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Id.* The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. Determination of whether a dispute is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual [disputes] that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury." *Cox v. Kentucky Dep't of*

-8-

*Transp.*, 53 F.3d 146, 149 (6th Cir. Ky. 1995).  FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate.  *Id.*

**IV.  Discussion.**

The Court has thoroughly and exhaustively reviewed the claims raised by Ms. Stewart; Defendants' Motion for Summary Judgment and the briefing responsive thereto; and, all supporting documentation, including a detailed analysis of the deposition testimony and evidentiary materials submitted by both Parties.

    **A.     Count I – FMLA**

The FMLA provides an eligible employee with twelve work-weeks of unpaid leave during any twelve-month period if she has "a serious health condition that makes [her] unable to perform the functions of [her] position." 29 U.S.C. § 2612(a)(1)(D).

"The right to reinstatement guaranteed by 29 U.S.C. § 2614(a)(1) is the linchpin of the entitlement theory because 'the FMLA does not provide leave for leave's sake, but instead provides leave with an expectation [that] an employee will return to work after the leave ends.'" *Edgar v. JAC Prods.,* 443 F.3d 501, 507 (6th Cir. Mich. 2006) (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 978 (8th Cir. Ark. 2005)).  However, "an employee loses the right to reinstatement 'if the employee is unable to perform an essential function of the position because of a physical or mental condition. . . .'" *Id.* at 516 (quoting 29 C.F.R. § 825.214(b));

-9-

*Kohls v. Beverly Enters. Wis., Inc.*, 259 F.3d 799, 805 (7th Cir. 2001) (citing 29 U.S.C. § 2614(a)(3)(B)); see also 29 C.F.R. § 825.216(a) ("An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee has been continuously employed during the FMLA leave period.").  The FMLA regulation omits the qualifying "with or without reasonable accommodation" but instead states that the employer may have obligations under the ADA.   29 C.F.R. 825.214(b).

29 U.S.C. § 2615 of the FMLA, entitled "Prohibited acts," reads as follows:

(a) Interference with rights.

   (1) Exercise of rights. It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 USCS §§ 2611 et seq.].

   (2) Discrimination. It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title [29 USCS §§ 2611 et seq.].

"The FMLA provides no relief unless the plaintiff has been prejudiced by the violation." *Harris v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 594 F.3d 476, 482 (6th Cir. Tenn. 2010).  *See Verdake v. United States Postal Serv.*, 378 F. App'x 567, 575 (6th Cir. Mich. 2010) (explaining that a technical violation of the FMLA is not actionable unless the employee suffers some prejudice or harm as a result).

In Count I, Ms. Stewart alleges that "after she initiated her qualified FMLA leave, Defendants immediately retaliated against her by refusing to allow her to return to work, demoting [her], and terminating her employment."  To establish a retaliation claim under the FMLA, the plaintiff must show that: "(1) [the employee] was engaged in an activity protected by the FMLA; (2) the employer knew that she was exercising her rights under the FMLA; (3) after

-10-

learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to her; and, (4) there was a causal connection between the protected FMLA activity and the adverse employment action.  *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274 (6th Cir. 2012).  If the employee satisfies these requirements, the burden shifts to the employer to proffer a legitimate, nondiscriminatory rationale for discharging the employee.  *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).

In her Memorandum in Opposition to Defendants' Motion for Summary Judgment, Ms. Stewart argues that according to Defendants' payroll records, she was terminated on February 23, 2013, not in July 2013 as alleged by Defendants, thereby leaving "little doubt as to whether [her] request for FMLA leave caused her termination."  Ms. Stewart argues that the date of her termination is in dispute, thereby precluding summary judgment.[4]  Ms. Stewart also asserts that Defendants' proffered reason for terminating her employment – her inability to return to work – is in question.

First, temporal proximity can only establish a causal connection if it is "coupled with other indicia of retaliatory conduct," of which there is none in this case.  *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006).  The Court has read each deposition in its entirety and thoroughly reviewed all evidence of record.  There is no evidence that Defendants retaliated against or terminated Ms. Stewart for requesting or taking leave under the FMLA.

Second, Ms. Stewart argues that she could have returned to work with an

---

[4] In her Complaint, Ms. Stewart alleges that in June 2013, Mr. Weinman told her that in addition to requiring a full medical release, she would have to accept a demotion should she return.  There is no evidence of record to support this allegation and Ms. Stewart makes no mention of the allegation in briefing.

accommodation, which Defendants wrongfully denied in retaliation for her taking FMLA leave. However, as stated above, unlike disability discrimination statutes, the FMLA does not impose an accommodation requirement. Defendants alleged failure to provide a requested accommodation, in and of itself, is not actionable under the FMLA and there is no evidence that the alleged failure of Defendants to accommodate Ms. Stewart's injury was in any way retaliatory. Further, Ms. Stewart never discussed an accommodation with Defendants and there no evidence of record to support her claim that she was ever released by her doctor to return to work in any capacity during the time period in question. Ms. Stewart was unable to perform the essential functions required of all Pizza Oven employees; whether or not she could perform the job with an accommodation is not at issue under the FMLA; and, she was not entitled to reinstatement.

Third, Ms. Stewart was absent from work for longer than12 weeks and was not medically cleared to return to work until months later. Ms. Stewart was injured on February 16, 2013 and immediately requested and was granted one week of medical leave from her job at Pizza Oven. While payroll records indicate a termination date of February 23, 2013, the undisputed facts in this case demonstrate Defendants understood Ms. Stewart was on medical leave and informed her she could return with a full medical release from her doctor. Although she claims that during the last week of February, approximately one month prior to her surgery, she gave Ms. Maley a document releasing her to return to work with a 5-pound lifting restriction, there is no evidence of this document in the record. The evidence of record indicates Ms. Stewart was not cleared to return to work in any capacity until September 1, 2013. (Docket #23 at p. 62.) However, even if the Court were to calculate 12 weeks beginning at the time of her surgery on

-12-

March 25, 2013, or from April 7 or 8, 2013 when she stopped into Pizza Oven to ask if there would be any issue with taking leave and was told there would be no problem as long as she had a full medical release, Ms. Stewart's entitlement to FMLA leave expired, at the latest, on July 1, 2013, after she had been absent for 12 weeks.  At that time, she was still not released to return to work in any capacity.  An employee loses the right to reinstatement 'if the employee is unable to perform an essential function of the position because of a physical or mental condition because of a physical or mental condition."  29 C.F.R. § 825.214(b).

For the foregoing reasons, Defendants are entitled to summary judgment as to Ms. Stewart's FMLA claim.

### B. Counts II and III – Discrimination and Wrongful Termination Based on Disability, Ohio Rev. Code § 4112.02.

Having granted Defendants' Motion for Summary Judgment on Ms. Stewart's lone Federal claim, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining State law claims.  It is well-settled that a District Court may decline to exercise supplemental jurisdiction over State law claims once it has dismissed all claims over which it possessed original jurisdiction.  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997).  Indeed, the Sixth Circuit has recognized that if all Federal claims are dismissed before trial, remaining State claims generally should be dismissed.  *Id.*; *Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992).  Therefore, pursuant to 28 U.S.C. §1367(c)(3) and (d), the Plaintiff's remaining State law claims are DISMISSED WITHOUT PREJUDICE.

### V. Conclusion.

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants (Docket #25) is hereby granted as to Count I, Ms. Stewart's FMLA claim.

Ms. Stewart's remaining State law discrimination claims, Counts II and III, are hereby DISMISSED WITHOUT PREJUDICE.

Counts IV and V are hereby DISMISSED WITH PREJUDICE.

This case is hereby TERMINATED.

IT IS SO ORDERED.

                                           s/Donald C. Nugent
                                          DONALD C. NUGENT
                                          United States District Judge

DATED:  March 24, 2016